# UNITED STATES DISTRICT COURT
## for the
## Northern District of Georgia
## Atlanta Division



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 04 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

D'Andre Parks
Plaintiff,

v.

Case Number: 1:25-CV-4326

Equity Residental
Defendant.

---

Plaintiff, [illegible], submits a formal complaint against Equity Residental via certified mail on August 4, 2025.



## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

DANDRE PARKS, individually and on behalf of her minor child,
Plaintiff,

v.

LUNA UPPER WESTSIDE APARTMENTS (managed property), and
EQUITY RESIDENTIAL (corporate owner/parent company),
Defendants.



1:25-CV-4326

### COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT, HABITABILITY VIOLATIONS AND EMOTIONAL DISTRESS

**BACKGROUND KNOWLEDGE**
Prior to filing, in good faith Plaintiff has initiated several service requests within the housing portal. The service request were then filled by maintenance Supervisor, Lofty Wright, yet repair attempts were falsely reported as resolved. Efforts were made to speak with Lofty directly yet his deflection and lack of concern led plaintiff to escalate communication via email to property management, than later with affiliates of the parent company, Equity Residential. Plaintiff has already explored all communication channels with the property and parent company; including attempts at negotiation and meditation to no avail. Violations were then reported to governmental agencies yet investigation were halted due to the scope of my concerns being outside of their jurisdiction because I couldn't prove if my concerns were created due to racial discrimination. I live in a mixed race, yet affluent housing complex.

At this time, this lawsuit arises from Defendants' repeated violation of Georgia state tenant and retaliation law in the form of residential lease breaches, failure to maintain habitable and safe premises, and retaliation for protected activity.

Plaintiff seeks an award of compensatory damages in the amount of **$3,000,000.00**, relocation to Juniper Sandy Spring Apartments, specifically to a two bedroom unit that is free of all hazards and has been properly inspected and documented on video, without transfer fees and accepted in good faith conditionally without having to acquire third party assistance from The Guarantors, sixteen (16) months of rent abatement, and such other relief as the Court deems just and proper. Plaintiff requests that all monetary compensation awarded be issued via check, in one single payment sent by certified mail to Plaintiff's address of record, and that all ordered relief including relocation and any other granted remedies be executed simultaneously rather than in staggered or delayed intervals.

**PARTIES**
Plaintiff D'Andrè Parks is a tenant in good standing at Luna Upper Westside Apartments in Atlanta, Georgia. She resides there with her minor child.

Defendant Luna Upper Westside Apartments is a residential apartment complex located in Atlanta, Georgia. The property is managed under the authority and policies of Equity Residential.

Defendant Equity Residential is the corporate owner and parent company of Luna Upper Westside Apartments. Equity Residential is responsible for setting and enforcing the policies, practices, and operations of Luna Upper Westside Apartments, and is liable for the acts and omissions committed at the property level.

### FACTUAL ALLEGATIONS

On or about the date of Plaintiff's lease signing, Plaintiff entered into a valid lease agreement with Defendants for the rental of Unit 2322 at Luna Upper Westside Apartments.

The lease agreement imposes duties on Defendants to maintain safe, habitable premises and to comply with applicable housing codes and standards.

From the outset of her tenancy, Plaintiff reported repeated electrical hazards, including breaker failures, wiring malfunctions, and unsafe electrical conditions within her apartment unit. These electrical hazards created ongoing risks to Plaintiff's safety and to the safety of her minor child.

Despite Plaintiff's repeated requests and documentation, Defendants failed and refused to adequately remedy the electrical hazards. Instead of taking responsibility for the wiring and electrical issues, Defendants attempted to minimize or shift blame by suggesting that Plaintiff's personal appliances were responsible, including a brand new kettle and other household items that Plaintiff had already confirmed were within safe wattage ranges.

On multiple occasions, Defendants' representatives, including their area facilities manager and other staff, acknowledged the issues but attempted to downplay their severity or responsibility. They were forewarned on June 5th, 2025, in email that escalation to the U.S. Department of Housing and Urban Development (HUD) would occur. Plaintiff followed through with her word due to Defendants' failure to correct these hazardous conditions, Plaintiff filed multiple complaints with the Georgia Commission on Equal Opportunity (GCEO) and the U.S. Department of Housing and Urban Development (HUD). In a dismissal letter dated June 23 and July 23 of 2025, The HUD acknowledged Plaintiff's filings but stated that the matter 'appears to involve a breach of contract, landlord/tenant dispute, or tortious claim outside the scope of HUD's jurisdiction. HUD's dismissal was based solely on jurisdictional limits, not the merits of Plaintiff's claims. HUD did not determine that the claims lacked substance. HUD explicitly acknowledged that Plaintiff had raised racial discrimination concerns, and the agency advised that Plaintiff could gather additional evidence and pursue remedies outside HUD's limited scope.

On August 1, 2025, Defendants' representatives, Chandra (last name unknown) area manager, area facilities manager Ron Matthews, and maintenance supervisor Lofty,

conducted yet another inspection of Plaintiff's apartment. It was observed that Plaintiff's home was well-maintained, clean, and organized. They also observed Plaintiff engaging in structured teaching practices with her minor son.

During the inspection Defendants conducted electrical outlet testing in my home. While using an industry-standard outlet tester device, all five outlets positioned in the kitchen area lit up with a red and blue light combination. According to manufacturer instructions and electrical safety industry standards, this combination indicates reversed polarity and a missing or faulty ground connection; both hazardous conditions that present a risk of electrical shock, potential fire, and damage to electrical equipment. These conditions also create an unsafe living environment, particularly dangerous for a home with a young child.

Despite this clear warning from the device, when I directly asked the Area Facilities Manager what the red and blue lights meant, he responded, "It means the outlet works," thereby omitting the true and serious nature of the electrical hazard present. In reality, none of the five kitchen outlets tested function at all. In addition to the outlets being faulty, the breaker continues to shut off, creating an electrical current interruption that disables the outlets mentioned and completely shuts off the refrigerator. Regardless of how many times Defendants send an electrician, the maintenance supervisor or reset the breaker, this issue persists, resulting in frequent spoilage of food. This ongoing spoilage has increased my monthly expenses, as I must purchase food from outside sources, given that my mini fridge can only sustain so much storage.

I also placed on record that I had only one plug-in device at the time of the inspection and that I generally do not have many items plugged in at any given time, as I am cautious with my energy usage. Despite this, Defendants attempted to attribute the issue to my appliances. In the video, I can be heard stating these facts, as well as explaining that my own knowledge and expertise as a continuous learner led me to purchase appliances that are suitable for the environment and appropriate for safe electrical usage. The interaction is fully documented on video and will be submitted during discovery within Plaintiff's evidentiary bundle; the bundle also includes other videos, email threads, and maintenance request.

Despite acknowledging the hazardous electrical issues, Defendants attempted once again to deflect responsibility by attributing the hazards to Plaintiff's appliances rather than the faulty wiring in the apartment unit.

During this inspection, Defendants also engaged in condescending and dismissive behavior toward Plaintiff, despite her documented credentials, research, and professionalism.

These acts were consistent with Defendants' pattern of retaliation following Plaintiff's HUD complaints and reinforced the ongoing breach of the lease agreement and statutory protections owed to Plaintiff.

Defendants' conduct intentionally or recklessly caused Plaintiff severe emotional distress, including stress, anxiety, and disruption to her home life and well-being.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment against Defendants, jointly and severally, for compensatory damages in the amount of $3 million;

b. Order Defendants to provide Plaintiff with relocation to a safe unit of equal or greater quality at Juniper Sandy Springs Apartments without charging transfer fees and third party guarantor services;

c. Award Plaintiff 16 months of rent abatement to compensate for unsafe conditions and breaches of habitability;

d. Grant such other and further relief as this Court deems just and proper.

## PREEMPTIVE CLOSING STATEMENT

Furthermore, Plaintiff preemptively states that she is in possession of video evidence of the unit in its current state. The bedroom has accent walls of the colors black and green. Wallpaper was applied in the living room. Pictures were hung and removed. Plaintiff has not vandalized the property or broken any appliances. Plaintiff has upgraded fixtures like light bulbs, shower heads and was instructed to purchase her own lock for her apartment door upon move in due to the fob system not working. All original items were securely stored in a kitchen draw closest to the pantry. Additionally, the keyless entry pad to the door was replaced months later by the property. The knob Plaintiff purchase was installed by maintenance as requested via service request on the coat closet to help secure her sons toys.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

*[signature]*

D'Andrè Parks
2265 Marietta Blvd. NW Apt 2322, Atlanta, Ga 30318
Dandrejanae21@gmail.com
404-983-2931